# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**UNITED STATES OF AMERICA**

     **v.**                               **CASE NO. 8:21-CR-115-TPB-CPT**

**SALOMON MALOOF**

## AMENDED PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by the Money Laundering and Asset Recovery Section of the United States Department of Justice Criminal Division (hereafter referred to as the "Government"), and the defendant, SALOMON MALOOF, and the attorney for the defendant, Ben Stechschulte, mutually agree as follows:

    1.    <u>Count Pleading To</u>

    The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with Conspiracy to Commit an Offense Against the United States in violation of 18 U.S.C. § 371.

    2.    <u>Maximum Penalties</u>

    Count One carries a maximum sentence of five years imprisonment and a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim

Deft.'s initials _SM_

of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3. <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

(1) the Defendant and at least one other person in some way agreed to try to accomplish a shared and unlawful plan;

(2) the Defendant knew the unlawful purpose of the plan and willfully joined in it;

(3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Information; and

(4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

4. <u>Indictment Waiver</u>

Defendant hereby waives the right to be charged by way of indictment before a federal grand jury.

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the Government agrees not to charge defendant with committing any other federal criminal offenses

Doc ID: b0f9d1b7b2565e32

known to the Government at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.      <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the Government will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the Government, and the

Deft.'s initials _SM_                                    3

defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    Objections at Sentencing

At the time of sentencing, and in the event that no adverse information is received suggesting such a request to be unwarranted, the Government will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that such a request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw his guilty plea, nor withdraw from this plea agreement.

At the time of sentencing, and in the event that no adverse information is received suggesting otherwise, the Government also will not object to the defendant arguing for a downward variance and/or departure pursuant to 18 U.S.C. 3553(a) and U.S.S.G. 5H1.6 regarding the defendant's extraordinary family circumstances as the primary caretaker of his adult, autistic daughter as a basis. The defendant has provided valid documentation to the Government of the daughter's history of severe special needs. The Government will not object to the defendant arguing that the Court consider that a prolonged absence by the defendant would have an extraordinary,

Doc ID: b0f9d1b7b2565e32

negative affect on the care and stability of the defendant's daughter. The defendant understands that this argument regarding his primary caretaker status is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw his guilty plea, nor withdraw from this plea agreement.

At the time of sentencing, and in the event that no adverse information is received suggesting otherwise, the Government also will not object to the defendant arguing for mitigating role consideration under U.S.S.G. §3B1.2. The defendant understands that this mitigating role argument is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw his guilty plea, nor withdraw from this plea agreement.

8.     <u>Cooperation - Substantial Assistance to be Considered</u>

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's

Deft.'s initials _____          5

possession or control, and to be reasonably available for interviews which the Government may require. If the cooperation is completed prior to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the Government, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the Government, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the Government, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

      9.    <u>Use of Information - Section 1B1.8</u>

      Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the

Doc ID: b0f9d1b7b2565e32

course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10. <u>Cooperation - Responsibilities of Parties</u>

a.  The Government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the Government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.  It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Deft.'s initials _SM_                                  7

Doc ID: b0f9d1b7b2565e32

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the

Deft.'s initials ___*SM*___                               8

defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The Government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the Government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the Government, the Government may move the Court to declare this entire plea agreement null and void.

11.     <u>Forfeiture of Assets</u>


Doc ID: b0f9d1b7b2565e32

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. 982(a)(1), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

Doc ID: b0f9d1b7b2565e32

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the Government. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the Government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to,

Doc ID: b0f9d1b7b2565e32

the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

    12.  <u>Restitution, Special Assessment and Fine</u>

Doc ID: b0f9d1b7b2565e32

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

The defendant understands that this agreement imposes no limitation as to fine.

13. <u>Supervised Release</u>

Deft.'s initials ___SM___                              13

Doc ID: b0f9d1b7b2565e32

The defendant understands that the offense to which the defendant is pleading guilty provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

14.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

15.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Deft.'s initials __*SM*__                                      14

16. <u>Financial Disclosures</u>

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the Government needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the Government to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the Government to obtain current

Deft.'s initials ___*SM*___                 15

credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

17.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between defendant or defendant's attorney, and attorneys or other agents for the Government regarding any recommendations by the Government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The Government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the Government's recommendations contained herein.

18.     Defendant's Waiver of Right to Appeal the Sentence

Doc ID: b0f9d1b7b2565e32

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the Government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

19. <u>Agreement with the Government</u>

It is further understood that this agreement is limited to the United States Attorney for the Northern District of Georgia and the Money Laundering and Asset Recovery Section of the United States Department of Justice Criminal Division, and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Deft.'s initials _SM_    17

20. <u>Filing of Agreement</u>

   This agreement shall be presented to the Court, in open court or
in camera, in whole or in part, upon a showing of good cause, and filed in this
cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

21. <u>Voluntariness</u>

   The defendant acknowledges that defendant is entering into this
agreement and is pleading guilty freely and voluntarily without reliance upon
any discussions between attorneys for the Government and the defendant and
defendant's attorney, and without promise of benefit of any kind (other than
the concessions contained herein), and without threats, force, intimidation, or
coercion of any kind. The defendant further acknowledges defendant's
understanding of the nature of the offense or offenses to which defendant is
pleading guilty and the elements thereof, including the penalties provided by
law, and defendant's complete satisfaction with the representation and advice
received from defendant's undersigned counsel (if any). The defendant also
understands that defendant has the right to plead not guilty or to persist in that
plea if it has already been made, and that defendant has the right to be tried by
a jury with the assistance of counsel, the right to confront and cross-examine
the witnesses against defendant, the right against compulsory self-
incrimination, and the right to compulsory process for the attendance of

Deft.'s initials _____*SM*_____          18

witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

22. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Beginning on an unknown date, but no later than August 2013, and continuing through at least in or around January 2017, the defendant, SALOMON MALOOF ("MALOOF") and his co-conspirators, including a

Deft.'s initials ___*SM*___                    19

Doc ID: b0f9d1b7b2565e32

professional money launderer known herein as Co-conspirator-2, and a Special Agent with the United States Drug Enforcement Administration ("DEA") known herein Co-conspirator-3, engaged in a scheme to launder, repatriate, and convert illicit drug proceeds held in the United States from U.S. dollars ("dollars") into Colombian pesos ("pesos") for distribution in Colombia. All members of the scheme, including MALOOF, were aware that the funds in their scheme were ultimately traceable to drug transactions. MALOOF, Co-conspirator-2, Co-conspirator-3 and other co-conspirators executed their scheme in at least two ways, both of which employed the black-market peso exchange ("BMPE")[1] and trade-based money laundering ("TBML").[2]

First, Co-conspirator-2 and Co-conspirator 3 opened, and caused others to open, bank accounts in the United States for the purpose of laundering drug proceeds from the United States to Colombia. Without DEA authorization, Co-conspirator 3 then arranged for these accounts to receive drug proceeds

[1] The BMPE is a means by which individuals in the United States repatriate U.S dollar-denominated funds in the United States to Colombia and convert them into Colombian pesos outside the official international banking system. Typically, money brokers arrange for the receipt of dollars in the United States, followed by a peso-denominated "mirror" payout in Colombia. Because the brokers retain stockpiles of dollars and pesos, they can make these payments quickly, keeping track of what parties owe or are owed what, and in which currency, through a ledger system.

[2] TMBL is another process by which dollars are repatriated to Colombia and exchanged for pesos. In a conventional TBML scheme, illicit, dollar-denominated proceeds in the United States are deposited into U.S. bank accounts and then used to purchase goods that are exported to Colombia. Once arrived in Colombia, the goods are sold in exchange for pesos, accomplishing the three goals of laundering, repatriation, and conversion.

Doc ID: b0f9d1b7b2565e32

secretly diverted from DEA investigations. Co-conspirator-2 and others then transferred the drug proceeds from the bank accounts to MALOOF disguised as payments to MALOOF's Miami-area export business, Cell Network, Inc. For instance, from October 31, 2016, to January 18, 2017, eight checks written from a bank account in the U.S. secretly controlled by Co-conspirator-2 and Co-conspirator 3 were deposited into Cell Network, Inc.'s account at a U.S. bank known to the Government. MALOOF used the funds that he received from Co-conspirator-2 to purchase cellular telephones through Cell Network, Inc. The phones were exported to Colombia and sold in exchange for pesos. MALOOF made a profit from the sale of the phones and used the pesos obtained in Colombia to pay back Co-conspirator-2 or to pay a drug trafficking organization on behalf of Co-conspirator-2.

A second means by which MALOOF, Co-conspirator-2, Co-conspirator-3, and other co-conspirators facilitated the laundering, repatriation, and conversion of drug proceeds from United States into pesos in Colombia involved the use of undercover accounts controlled by the DEA. As part of the agency's mission to identify and bring to justice those responsible for laundering drug proceeds in the United States and abroad, the DEA maintained undercover accounts in the name of shell companies, which accounts it used to receive illicit cash deposits and then wire transfer to

Doc ID: b0f9d1b7b2565e32

suspected money launderers. One of these shell companies was Company-C, which maintained accounts in Hillsborough County, which is located within the Middle District of Florida.

The account of Company-C regularly received large cash deposits and other transfers constituting illegal drug proceeds. Co-conspirator-3, often through an intermediary, such as Co-conspirator-4, provided Co-conspirator-2 with the opportunity to purchase funds in Company-C and other DEA undercover accounts for use in the TBML/BMPE scheme.

For example, on November 14, 2014, Co-conspirator-4 was offered a €480,000 money laundering contract that constituted drug proceeds in Amsterdam. On November 14, 2014, an undercover law enforcement agent obtained the €480,000 euros, which at the time, was equivalent to $596,928. This money was ultimately deposited into Company-C's account. Instead of subsequently wiring the entirety of the money to suspected money launders for investigative purposes, Co-conspirator-3 illegally instructed DEA to wire $45,000 to Cell Network, Inc.'s bank account. Cell Network, Inc. then issued checks to purchase cellular telephones with the drug proceeds, which were exported to Colombia and sold in exchange for pesos.

Likewise, in or about July 2014, Co-conspirator-4 was offered a €500,000 money laundering contract that constituted drug proceeds in Italy.

Doc ID: b0f9d1b7b2565e32

During the same month, an undercover law enforcement officer received €500,010, which was converted to $653,784.92, from an unknown person and transferred to an undercover DEA bank account. On or about August 6, 2014, without disclosing the true nature of Cell Network, Inc. as being owned by a criminal associate, Co-conspirator-3 instructed that $150,000 be wire transferred to Cell Network, Inc. Following this deposit, MALOOF had checks drawn on the Cell Network, Inc. account for the purchase of phones to be sold in Colombia. These phones were then sold for cash in Colombia and delivered at the direction of co-conspirators.

In total, between in or about August 2013 and January 23, 2017, MALOOF through Cell Network, Inc. received approximately 51 deposits totaling over $3,800,000 in illegal drug proceeds from undercover DEA accounts. Included in those deposits is a check for $30,800 received and deposited by MALOOF in the United States on or about November 14, 2016. Two days later MALOOF delivered the $30,800 to co-conspirators in the Republic of Colombia. Neither MALOOF nor Co-conspirator-2 and Co-conspirator-3 were authorized by the DEA, nor were they otherwise acting under the color of law, to engage in these illegal laundering activities. The amount of illegally laundered funds attributed to MALOOF is at least $3,835,334.

Doc ID: b0f9d1b7b2565e32

23.     Entire Agreement

        This plea agreement constitutes the entire agreement between the

Government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

24.     Certification

        The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this _____ day of May, 2021.

                                        *Salomon Maloof*
                                _____
                                Salomon Maloof
                                Defendant


                                _____
                                Ben Stechschulte
                                Attorney for Defendant


                                DEBORAH L. CONNOR
                                Chief


                        By: _____
                                Joseph Palazzo
                                Deputy Chief
                                Money Laundering and Asset Recovery Section
                                U.S. Department of Justice

Doc ID: b0f9d1b7b2565e32