UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 8:21-CR-115-TPB-CPT

SALOMON MALOOF

### Government's Sentencing Memorandum

The Money Laundering and Asset Recovery Section of the United States Department of Justice Criminal Division ("the Government") hereby submits this memorandum regarding the sentencing of defendant Salomon Maloof ("the Defendant), including the findings of the presentence investigation report (the "PSR") filed on August 24, 2021. Doc. 33. This filing also includes the Government's response to the Defendant's sentencing memorandum filed on August 27, 2021. Doc. 35.

By the terms of the plea agreement (Doc. 19), the Government has already agreed to, "not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range" and to, "not object to the defendant arguing for a downward variance and/or departure pursuant to 18 U.S.C. 3553(a) and U.S.S.G. 5H1.6 regarding the defendant's extraordinary family circumstances as the primary caretaker of his adult, autistic daughter as a basis." Today the Government further states it

does not object to a final sentencing outcome that includes no new period of incarceration.

A.   **Background**

On March 30, 2021, a Bill of Information was filed charging the Defendant with a single count of conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371. Doc. 1. The Defendant waived indictment (Doc. 3) and agreed to plead guilty. Doc. 19. On May 10, 2021, this Court accepted a plea of guilty from him. Doc. 20. The Defendant is scheduled to be sentenced on August 31, 2021. Doc. 30.

As part of his plea, the Defendant admitted that between approximately August of 2013 and January of 2017, the defendant,

> and his co-conspirators, including a professional money launderer known herein as Co-conspirator-2, and a Special Agent with the United States Drug Enforcement Administration ("DEA") known herein Co-conspirator-3, engaged in a scheme to launder, repatriate, and convert illicit drug proceeds held in the United States from U.S. dollars ("dollars") into Colombian pesos ("pesos") for distribution in Colombia. All members of the scheme, including MALOOF, were aware that the funds in their scheme were ultimately traceable to drug transactions. MALOOF, Co-conspirator-2, Co-conspirator-3 and other co-conspirators executed their scheme in at least two ways, both of which employed the black-market peso exchange ("BMPE")[1] and trade-

---

[1] The BMPE is a means by which individuals in the United States repatriate U.S dollar-denominated funds in the United States to Colombia and convert them into Colombian pesos outside the official international banking system. Typically, money brokers arrange for the receipt of dollars in the United States, followed by a peso-denominated "mirror" payout in Colombia. Because the brokers retain stockpiles of dollars and pesos, they can make these payments quickly, keeping track of what parties owe or are owed what, and in which currency, through a ledger system.

based money laundering ("TBML").[2]

First, Co-conspirator-2 and Co-conspirator 3 opened, and caused others to open, bank accounts in the United States for the purpose of laundering drug proceeds from the United States to Colombia. Without DEA authorization, Co-conspirator 3 then arranged for these accounts to receive drug proceeds secretly diverted from DEA investigations. Co-conspirator-2 and others then transferred the drug proceeds from the bank accounts to MALOOF disguised as payments to MALOOF's Miami-area export business, Cell Network, Inc. For instance, from October 31, 2016, to January 18, 2017, eight checks written from a bank account in the U.S. secretly controlled by Co-conspirator-2 and Co-conspirator 3 were deposited into Cell Network, Inc.'s account at a U.S. bank known to the Government. MALOOF used the funds that he received from Co-conspirator-2 to purchase cellular telephones through Cell Network, Inc. The phones were exported to Colombia and sold in exchange for pesos. MALOOF made a profit from the sale of the phones and used the pesos obtained in Colombia to pay back Co-conspirator-2 or to pay a drug trafficking organization on behalf of Co-conspirator-2…

In total, between in or about August 2013 and January 23, 2017, MALOOF through Cell Network, Inc. received approximately 51 deposits totaling over $3,800,000 in illegal drug proceeds from undercover DEA accounts… Neither MALOOF nor Co-conspirator-2 and Co-conspirator-3 were authorized by the DEA, nor were they otherwise acting under the color of law, to engage in these illegal laundering activities. The amount of illegally laundered funds attributed to MALOOF is at least $3,835,334.

Doc. 19 at 19-23.

---

[2] TMBL is another process by which dollars are repatriated to Colombia and exchanged for pesos. In a conventional TBML scheme, illicit, dollar-denominated proceeds in the United States are deposited into U.S. bank accounts and then used to purchase goods that are exported to Colombia. Once arrived in Colombia, the goods are sold in exchange for pesos, accomplishing the three goals of laundering, repatriation, and conversion.

The defendant does not dispute any of the above facts in his sentencing memorandum. Doc. 35.

Further relevant background to defendant's coming sentencing is his prior prosecution in the Southern District of Florida for conduct related to the current case. *See United States v. Narvaez, et al.*, 1:16-CR-20824-JAL-2 (S.D. Fla.). Subsequent to an undercover sting conducted by the Internal Revenue Service-Criminal Investigations ("IRS-CI") in July of 2013, Maloof and another were indicted under seal on October 27, 2016, for conspiracy to launder drug proceeds, in violation of 18 U.S.C. § 1956(h), and drug money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). *Id.*, Doc. 3. Maloof was arrested on April 19, 2017 (*Id.*, Doc. 17) and on November 15, 2017, Maloof agreed to plead guilty to conspiracy to launder drug proceeds and the government agreed to dismiss the substantive money laundering count. *Id.*, Doc. 67.

As part of the guilty plea, Maloof admitted *inter alia* to having received from his co-defendant, "a white plastic bag containing approximately $50,000 in U.S. currency" for delivery in Colombia. *Id.*, Doc. 68 at 2-3. Maloof further admitted, "he knew that the money were proceeds of some kind of specified unlawful activity; namely, drug trafficking" and "received the money knowing

that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds." *Id.* at 3.

On February 21, 2018, United States District Judge Joan A. Lenard sentenced Maloof to a term of imprisonment of 16 months followed by three years of supervised release. *United States v. Narvaez, et al.*, Doc. 103 at 2. The Defendant was released from prison and supervision commenced on June 21, 2019. Doc. 33 at 10.

**B.** **Presentence Investigation Report**

The Government has no objections to the findings and recommendations of the PSR, including the just cause for downward departure noted in paragraph 106 on page 21, that "defendant's service of a sentence within the applicable guideline range will cause substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family, specifically his autistic daughter." Doc. 33.

**C.** **Position of the Government**

The Government's position is best represented by the terms and facts agreed upon in the plea agreement. Doc. 3. Accordingly, the Government agrees with the recommended United States Sentencing Guideline calculation by the United States Probation Office and agrees that the Defendant be sentenced at the low end of the calculation. However, the Government is also

aware that the Defendant has already served a significant prison sentence for his money laundering activity through his conviction in the Southern District of Florida ("SDFL"). At first glance, Maloof and his two cases may appear to be the actions of a recidivist. However, the Government is aware that Maloof had a singular career as a money launderer that stopped with his arrest on the SDFL charges in April of 2017. Despite being charged in two separate districts, the entirety of his criminal conduct is covered by the combined facts in both cases. Most significantly, the conduct in the present case took place entirely prior to his arrest by IRS-CI in April of 2017 for the SDFL case. While the SDFL count centers around a particular $50,000 money laundering attempt interdicted by the IRS-CI, the current case covers similar occurrences that took place after the SDFL sting.

Regarding the statutory factors to be considered, the Defendant's sentence must reflect the seriousness of his offense, must promote respect for the law, and must provide just punishment and adequate deterrence. *See* 18 U.S.C. § 3553(a)(2). However the Government's position is that the 16-month term of imprisonment in the SDFL case has already sufficiently addressed these factors. This past sentence for similar conduct, as well as the Defendant's positive disciplinary record while in custody and on supervised

release (Doc. 35 at 11), are significant determinants of "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1)

Accordingly, the Government does not object to the Defendant's request for a sentence of no more than 16 months of imprisonment and three years of supervised release, to run concurrent with the SDFL sentence and with time served credited. Supervised release is scheduled to terminate on June 21, 2022. Doc. 33 at 10.

          Respectfully submitted,

          DEBORAH L. CONNOR
          Chief
          Money Laundering and Asset Recovery Section

By:   /s/ Joseph Palazzo
          Joseph Palazzo, Deputy Chief
          MDFL No. 0669666
          U.S. Department of Justice
          1400 New York Avenue, N.W.
          10th Floor
          Washington, D.C. 20005
          (202) 514-1263
          joseph.palazzo@usdoj.gov

DATED this 29th day of August, 2021.